McCULLOCH COUNTY, Texas, Appellant,

v.

J. S. HAYS, Appellee.

No. 11052.

Court of Civil Appeals of Texas.

Austin.

April 3, 1963.

Rehearing Denied April 24, 1963.

Davee & Davee, Brady, for appellant.

Newman & McCollum, Brady, for appellee.

ARCHER, Chief Justice.

Motion for Rehearing filed by the appellant has been filed and we have concluded to withdraw our opinion rendered in this cause on February 27, 1963, and to reverse and render this cause, and direct the appellee to remove the fence from the roadway area and to reconstruct it on the old fence line from which it was moved.

This suit was instituted by appellant against appellee seeking a mandatory injunction requiring appellee to remove an obstruction, a fence, from a county road approximately .3 of a mile in length, and diverting a part thereof, a strip 10 to 12 feet in width and being off the north part of the road.

The case was tried without a jury, and after a trial the court denied the appellant all relief on the grounds that there was no evidence to support the allegations or claim made by appellant, and entered judgment for appellee.

Appellant bases his appeal on the assigned error of the court in rendering judgment for appellee.

Appellant offered the testimony of a number of witnesses, some of whom were officials of the county and one, Oscar Betzel, the commissioner of the precinct in which the road is located, who testified that he had been commissioner for 5 years and was acquainted with the road and worked it several times during the years 1957 to 1960, and that it was used as a public road, and as commissioner, had possession of the road.

The witness testified as to conversations he had with Mr. Hays, the appellee, in the summer of 1960, in fact, several in regard to the road. That the first conversation was several years ago with Mr. Hays in regard to clearing the fence, fence right-of-way, and he would clean the right-of-way; that Mr. Hays wanted some posts and that he, the commissioner, said he would help with the posts and that Hays agreed to clear this fence out to get the brush out of the way and later on did so, but on a later date moved his fence over into the roadbed, south of the old fence, some 10 or 12 feet; that he did not give Hays consent to move the fence.

All of the other testimony was concerned with the existence of the road for a long period of time, and of the usage of the roadway by the public and the maintenance by the county.

The road is, as stated, less than ⅓ of a mile in length and extends from the Coleman Road through a community center and ends at the residences of two families.

Mr. Bud Frost, who lived on the road in question testified:

"Q   Has there ever been any period of time when it was discontinued as a public road?

"A   Not as I know of.

"Q   And they have used that uninterrupted and continually?

"A   Yes, sir.

"Q   For more than 50 years?

"A   Yes, sir.

*   *   *   *   *   *

"Q   Do you know when that road was fenced, Bud?

"A   Well, not the exact date, now. It was either '25 or '26.

"Q   '25 or '26. How do you recall that date, Bud?

"A   Well, they moved them stores and things from over there over to where they are now.

*   *   *   *   *   *

"Q   Do you own any land adjoining that road?

"A   South of it.

"Q   South. Did you build the fence along the right-of-way?

"A   No. My daddy did.

"Q  Your daddy. In 1925 or 1926, do you know who built the north fence?

"A  Joe.

"Q  Joe who?

"A  Hays.

"Q  All right. Now, do you know where the old fence was, do you?

"A  Yes, sir.

"Q  Prior to the year 1960?

"A  I think so.

"Q  Do you know where the new fence now is?

"A  Yes, sir.

"Q  Where the old fence was, as regards the old fence, where does the new fence set?

"A  Well, I'd say eight or ten feet south."

Appellee offered no evidence; hence this, as well as all other testimony was undisputed.

There was introduced a small map of the area but we are unable to insert such herein as to be of assistance to an understanding of the case. The road turns off the Coleman Road in a circular direction, but westward to its end, passing the center and ending at the residence of Mr. Frost after turning south for a short distance.

■■  The evidence must be viewed in the light most favorable to the judgment of the Trial Court, and sustained if there is evidence to support it, and this we have done but do not believe the court was justified in rendering the judgment denying appellant the relief sought.

■  The granting or refusal to grant injunctions is within the sound discretion of the Trial Court and the exercise of which will not be disturbed on appeal in the absence of a clear showing of abuse of discretion, but we believe the court abused his discretion in not ordering the fence restored to its former place.

Motion for rehearing granted and the judgment of the Trial Court is reversed and judgment is rendered for appellant.

Reversed and rendered.